# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>v.<br>Ernesto Alonso Ayala-Garcia,<br>Defendant. | No. CR-18-00298-001-TUC-RM (DTF)<br>**ORDER** |

Pending before the Court is Defendant's Motion to Suppress (Doc. 35) and Magistrate Judge D. Thomas Ferraro's Report and Recommendation (Doc. 73), in which he recommends that the Court grant in part and deny in part the Motion.[1] Judge Ferraro held three days of hearings on the Motion to Suppress (*see* Docs. 52, 54, 66). Defendant has objected to portions of the Report and Recommendation (Doc. 74) and the Government responded to those objections (Doc. 79). The Court will adopt the Report and Recommendation in part, and grant the Motion to Suppress in its entirety.

## I. Factual Background[2]

Defendant is charged with one count of Conspiracy to Possess with Intent to Distribute Fentanyl (21 U.S.C. § 846) and one count of Possession with Intent to Distribute Fentanyl (21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vi)). (Doc. 7.) Defendant's arrest and subsequent indictment resulted from a Drug Enforcement Agency High

---

[1] Also pending is the Government's Motion in Limine (Doc. 37), to which Defendant has responded (Doc. 42). The Court will resolve this Motion separately.
[2] These facts were taken primarily from testimony provided during the hearings before Judge Ferraro.

Intensity Drug Trafficking Areas Task Force ("HIDTA") investigation to locate a white Jeep Liberty. (Doc. 59 at 23-24.) On February 1, 2018, investigators spotted the Jeep Liberty heading northbound on Interstate 19, and followed it to a Food City parking lot. (*Id.* at 24-27, 72.) At the Food City parking lot, Defendant was seen getting into the Jeep along with a woman and a young girl, and together they rode to a Wal-Mart parking lot a few miles away. (*Id.* at 73-74.) Then, Defendant drove the Jeep from the Wal-Mart parking lot, by an indirect route along side streets, (*Id.* at 28, 75) to Araceli Hughes's[3] home at 5231 S. Via Noche Buena in a nearby subdivision, where he parked it in the garage. (*Id.* at 11-12.)

Defendant left the Jeep in the closed garage and, along with his wife and Ms. Hughes (Doc. 59 at 12), departed the house in a silver Chrysler Sebring (Doc. 60 at 9-10, 17). At around 6:00 p.m. that evening, Officers encountered Defendant, his wife, and Ms. Hughes with the Sebring stopped on the side of the road; Officers pulled up next to them to conduct a wellness check.[4] (*Id.* at 10-12.) The two women informed the Officers they did not require assistance, and Defendant's wife, after being questioned, stated that she owned the Sebring. (*Id.* at 12-13.) Defendant's wife and Ms. Hughes also provided the officers with identification; there were no outstanding warrants on either. (*Id.* at 32-33.) Officers determined that none of the occupants (Defendant, Defendant's wife, or Ms. Hughes) were the registered owner of the Sebring, and proceeded to ask follow-up questions, which the three answered in an evasive manner. (*Id.* at 13-15, 23.) Without objection,[5] the officers conducted a canine sweep and search of the Sebring; nothing of note was found.[6] (*Id.* at 17.) Nevertheless, and after remaining with the Sebring and its occupants for one and a half hours (*id.* at 37), officers handcuffed Defendant, patted him

---

[3] Ms. Hughes is Defendant's wife's cousin.
[4] Although an officer at the scene testified his primary purpose was the wellness check (Doc. 60 at 11-12), he also testified that he had been instructed to stop the car in order to assist with the ongoing HIDTA investigation into the Jeep Liberty. (Doc. 60 at 64-65.)
[5] Officers informed the canine handler that the encounter was consensual, and he specifically sought consent from one of the women to conduct the canine sweep; he did not, however, bother asking her name. (Doc. 60 at 76, 86.)
[6] The canine alerted to the trunk of the vehicle, but a physical search did not reveal any contraband. (Doc. 60 at 77.)

down, and put him in an unmarked law enforcement vehicle; at no point was he Mirandized.[7] (*Id,* at 20-21, 55-56.)

Ms. Hughes, who remained along the side of the road with Defendant and his wife, was separated from the group by two of the five law enforcement officers at the scene. (Doc. 60 at 47-49, 97.) There, separated from her travel companions, she was asked for consent to search her home, to which she agreed. (*Id.* at 98.) Ms. Hughes was then placed in the back of a squad car and escorted back to her home. (*Id.* at 98-99.)

Defendant was later driven to Ms. Hughes' home, where officers were conducting a canine sweep of the garage and later a physical search of the Jeep while it was parked in the garage. (Doc. 59 at 100-01; Doc. 60 at 56-57.) While conducting a canine sweep of the garage, during which the canine did not penetrate the interior of the Jeep Liberty, the canine alerted to a large portion of the Jeep Liberty. (*Id.* at 80-81.) By the time agents began physically searching the interior of the vehicle, Defendant had been brought to the house and was visible to the agents searching the Jeep Liberty, which was still inside the open garage. (*Id.* at 105-06.)

Agents found fourteen packages, or 15.44 kilograms, of fentanyl hidden inside the Jeep Liberty. (Doc. 60 at 107; Doc. 68 at 7-8, 16.) Defendant was asked about the drugs, but informed agents that he knew nothing about them, adding that he did not know what was happening and that he could call the person he was supposed to give "that" to. (Doc. 60 at 108.) Later that evening, Defendant was brought to the Homeland Security Investigations Nogales office; the agent who interviewed him testified that Defendant was Mirandized for the first time upon arrival, at 9:09 p.m.[8] (Doc. 68 at 23, 36, 41.) While there, a U.S. Border Patrol Agent at the Nogales office sought Defendant's consent to search the contents of his cellphone.[9] (*Id.* at 17.) Defendant signed a boilerplate

---

[7] Officers at the scene did not believe they were placing Defendant under arrest, nor did they tell Defendant he was not free to leave, but concluded that he was in fact not free to leave. (*See* Doc. 60 at 48-49, 54, 61.)
[8] The agent also testified that he was unsure whether the Miranda warnings were given before or after Defendant signed a cellphone search consent form. (Doc. 68 at 27-28.)
[9] The cellphone was seized at around 7:00 p.m., but agents were not able to testify as to where the cellphone was seized. (Doc. 68 at 31, 37.)

Spanish-language consent form. (*Id.* at 18.)

**II.     The Motion to Suppress & the Report and Recommendation**

Defendant filed a Motion to Suppress (Doc. 35) seeking suppression of "all evidence and statements the government obtained as a result of his unlawful detention, his unlawful arrest without administration of Miranda warning, and of the unlawful search committed on February 1, 2018." (Doc. 35 at 1.) The Government responded (Doc. 43), and Defendant replied in support of his Motion (Doc. 46). Judge Ferraro held evidentiary hearings on the Motion on January 24, 2019 (Doc. 52), February 6, 2019 (Doc. 54), and February 12, 2019 (Doc. 66). At the conclusion of the third day, Judge Ferraro instructed the parties to submit briefing regarding specifically what evidence the Government intended to offer, and what evidence Defendant sought to have suppressed. (*See* Doc. 68 at 74-75; Doc. 66.) Defendant's supplemental brief indicates that he specifically seeks suppression of: (1) contraband seized from the Jeep Liberty; (2) any statements or gestures Defendant made on February 1, 2018 while detained along the side of the road with the Sebring and in the driveway at 5231 S. Via Noche Buena; (3) Defendant's Nokia cellphone and any evidence obtained therefrom; and (4) evidence relating to a canine alert on the Sebring. (Doc. 63 at 1-2.) The Government submitted briefs indicating the evidence it sought to introduce (Docs. 62, 64) and a supplemental memorandum supporting denial of Defendant's Motion to Suppress (Doc. 72).

On March 11, 2019, Judge Ferraro issued a Report and Recommendation recommending that this Court *grant* the motion to suppress as to: (1) all statements and gestures made while Defendant was detained with the Sebring and in the driveway at 5231 S. Via Noche Buena; (2) evidence obtained from Defendant's Nokia cellphone; and (3) evidence relating to the canine alert on the Sebring. (Doc. 73 at 12.) Judge Ferraro recommends that this Court *deny* the motion to suppress as to the narcotics discovered in the Jeep Liberty, despite finding that Defendant has standing to contest the search of the Jeep Liberty. (*Id.* at 10, 12.) Defendant filed an Objection[10] (Doc. 74) to the Report and

---
[10] Defendant concurrently filed a Motion for Leave to File Excess Pages (Doc. 75), which the Court granted (Doc. 78).

- 4 -

Recommendation's conclusion that the contraband seized from the Jeep Liberty should not be suppressed. The Government responded to the Objection (Doc. 79) arguing that Judge Ferraro properly applied the law in finding that evidence seized from the Jeep Liberty should not be suppressed and that, in any event, Defendant has no standing to challenge the search because he conceded that he had no privacy interest in the garage where the Jeep was parked (*id.* at 6-7).

### A. Unobjected-to Portions of the Report and Recommendation

Neither Defendant nor the Government has objected to Judge Ferraro's recommendations that this Court (1) grant Defendant's motion to suppress all of Defendant's statements and/or gestures made while Defendant was detained with the Sebring and in the driveway at 5231 S. Via Noche Buena, (2) grant the motion to suppress as to the canine alert on the Sebring, (3) find that Defendant has standing to contest the search of the Jeep Liberty, and (4) grant Defendant's motion to suppress the search of the Nokia cellular phone and the analysis of Nokia cellular phone's content. (*See* Doc. 72 at 12; Doc. 74.)

A district judge must "make a de novo determination of those portions" of a magistrate judge's "report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

The Court finds that Defendant and the Government have waived their respective rights to de novo review of the above-described portions of Judge Ferraro's Report and

1  Recommendation. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Nevertheless, the Court has reviewed Judge Ferraro's Report and Recommendation, the Parties' briefs, and the record and finds that those portions are proper in all material aspects and will adopt them.

### B. De Novo Review

The Court will conduct a de novo review of the Motion to Suppress as it relates to suppression of the evidence seized from the Jeep Liberty. 28 U.S.C. § 636(b)(1). Following its de novo consideration of the totality of the circumstances, the Court finds that the evidence from the Jeep Liberty must be suppressed; Defendant's Motion will be granted.

The Court's analysis with regard to the Jeep Liberty must start and end with the illegally extended detention of the Sebring and its passengers, for which Judge Ferraro found it necessary to suppress evidence of a canine alert and Defendant's statements upon arriving at 5231 S. Via Noche Buena. Neither the Government nor Defendant has objected to suppression of the evidence obtained while law enforcement detained Defendant and his travel companions along the side of the road with the Sebring. The exclusionary rule "requires trial courts to exclude unlawfully seized evidence in a criminal trial[.]" *Utah v. Strieff*, 136 S.Ct. 2056, 2061 (2016). "[T]he exclusionary rule encompasses both the 'primary evidence obtained as a direct result of an illegal search or seizure' and, 'evidence later discovered and found to be derivative of an illegality,' the so-called 'fruit of the poisonous tree.'" *Id.* (quoting *Segura v. United States*, 468 U.S. 796, 804 (1984)).

All of law enforcement's encounters and searches here temporally followed, and necessarily flowed from, the illegally extended detention. This is true even of Ms. Hughes' consent, which was obtained only after extended detention, and that the Court will assume without deciding was voluntarily given.[11] *United States v. Washington*, 490

---
[11] The Court notes that the voluntariness of her consent is tenuous at best. The totality of the circumstances are considered when determining whether consent to search was voluntarily given. *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009). The Court considers various factors, such as (1) whether the consenting individual was in custody;

F.3d 765, 776 (9th Cir. 2007) (explaining that even voluntary consent must be purged of the taint from the original illegality in order to be valid). None of the exceptions to the fruit of the poisonous tree doctrine apply here. *See e.g. Murray v. United States*, 487 U.S. 533, 537 (1988) (independent source doctrine). Accordingly, all evidence obtained following the illegally extended encounter with the passengers of the Chrysler Sebring, including the evidence found in the Jeep Liberty, is fruit of the poisonous tree and must be suppressed. Defendant's Motion to Suppress will be granted.

**IT IS ORDERED** that Judge Ferraro's Report and Recommendation (Doc. 73) is **adopted in part and rejected in part**, as set forth above.

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress (Doc. 35) is **granted**.

Dated this 31st day of July, 2019.

_____
Honorable Rosemary Márquez
United States District Judge

---

(2) whether the arresting officers had their guns drawn; (3) whether Miranda warnings were given; (4) whether the consenting individual was notified that she had a right not to consent; and (5) whether the consenting individual had been told a search warrant could be obtained, in assessing the totality of the circumstances. *Id*.

The encounter was moved from a public space on the side of the road, to Ms. Hughes' home, a private space, and although the request for consent was clearly framed as a question, there is no evidence that she was informed, or that the situation made clear, that Ms. Hughes could terminate the encounter. Ms. Hughes was never Mirandized. Lastly Ms. Hughes was asked repeatedly for her consent, but there is no evidence that she was told she could refuse consent. And, in light of the circumstances, for example that she was escorted to her home in a law enforcement vehicle, it cannot be assumed that Ms. Hughes knew of her right to refuse consent.