**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-18-00298-001-TUC-RM (DTF) |
| Plaintiff, | **ORDER** |
| v. | |
| Ernesto Alonso Ayala-Garcia, | |
| Defendant. | |

Currently pending before the Court is the Government's Motion for Reconsideration. (Doc. 85.) The Government asks the Court to reconsider its August 1, 2019 Order (Doc. 83) granting Defendant's Motion to Suppress (Doc. 35).[1] The Government argues that the Court's Order is manifestly erroneous because the Court failed to consider (1) Defendant's lack of standing to challenge the search of the garage wherein a Jeep Liberty containing fentanyl was found, and (2) Defendant's lack of standing to challenge the voluntariness of the homeowner's consent to the search of the garage. (*Id.*) For the reasons that follow, the Government's Motion will be denied.

**I.    Background**

On February 1, 2018, police officers observed Defendant drive a Jeep Liberty into the garage of a residence at 5231 S. Via Noche Buena. (Doc. 73 at 2.) A short time later, Defendant and two women drove away from the home in a Chrysler Sebring. (*Id.*) Officers later noticed the Sebring stopped on the side of the road, and they decided to

---
[1] Also pending is Defendant's Motion in Limine (Doc. 37), which will be resolved separately.

conduct a welfare check. (*Id.*) Ultimately, officers detained the occupants of the Sebring at the side of the road for one and a half to two hours, during which time officers conducted a dog sniff, searched the Sebring, discovered that one of the vehicle's occupants owned the home at 5231 S. Via Noche Buena, and obtained the homeowner's consent to search that residence. (*Id.* at 2-3.) During officers' search of the residence, a police canine alerted to the Jeep Liberty in the garage. (*Id.* at 3.) Officers searched the Jeep Liberty and found 15.44 kilograms of fentanyl in a hidden compartment. (*Id.* at 4.)

Defendant moved to suppress evidence of the drugs seized from the Jeep Liberty, among other evidence. (Doc. 73 at 4.) Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation, recommending that this Court deny Defendant's Motion to Suppress as to the seized drugs but grant it as to other evidence at issue. (*Id.* at 12.) Defendant objected to the Report and Recommendation to the extent that it recommended denial of Defendant's request to suppress evidence of the seized drugs. (Doc. 74.) This Court partially adopted and partially rejected the Report and Recommendation and granted Defendant's Motion to Suppress in its entirety. (Doc. 83.)

**II.    Legal Standard**

Motions for reconsideration should be granted only in rare circumstances. *See Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Motions for reconsideration will ordinarily be denied "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to [the court's] attention earlier with reasonable diligence." LRCiv 7.2(g)(1).

Pursuant to the Local Rules of Civil Procedure, "[n]o motion for reconsideration may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order." LRCiv 7.2(g)(1). Motions for

reconsideration should not be used for the purpose of asking a court "to rethink what the court had already thought through—rightly or wrongly." *Defenders of Wildlife*, 909 F. Supp. at 1351 (internal quotation marks omitted). Mere disagreement with a previous order is an insufficient basis for reconsideration. *See Leong v. Hilton Hotels Corp.*, 689 F. Supp. 1572, 1573 (D. Haw. 1988).

### III. Discussion

Standing to invoke the exclusionary rule is "limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of police misconduct." *United States v. Leon*, 468 U.S. 897, 910 (1984). In its August 1, 2019 Order, the Court held that evidence seized from the Jeep Liberty is fruit of the poisonous tree because "[a]ll of law enforcement's encounters and searches," including the homeowner's consent to the search of her home and garage, "temporally followed, and necessarily flowed from," the earlier unlawful detention of the occupants of the Sebring, including Defendant. (Doc. 83 at 6.) If the evidence found in the Jeep Liberty was seized as a result of Defendant's prior unlawful detention, then Defendant has standing to seek suppression of the evidence as fruit of the poisonous tree, even if he would not have had standing to directly challenge the search of the garage in which the Jeep Liberty was found or the homeowner's consent to search the garage. *Cf. United States v. Twilley*, 222 F.3d 1092, 1095-97 (2000) (holding that, although the defendant did not have standing to directly challenge the search of a vehicle in which he was a passenger, he had standing to seek suppression of evidence discovered in the vehicle as the fruit of an unlawful stop). Accordingly, the Government's arguments concerning Defendant's lack of standing to *directly* challenge the homeowner's consent and the search of the garage do not show manifest error requiring reconsideration of the Court's August 1, 2019 Order.

Nor does the Government's reliance on *United States v. Pulliam*, 405 F.3d 782 (9th Cir. 2005) require reconsideration of the Court's prior Order. In *Pulliam*, the defendant was a passenger in a car that was stopped by police officers. *Id.* at 784. The

initial traffic stop was lawful but the prolonged detention of the passenger during the stop was not. *See id.* at 785, 788-89. In a 2-1 majority opinion, the Ninth Circuit found that the defendant had standing to challenge his own detention during the stop, but that he could not invoke the exclusionary rule to suppress evidence of a gun that officers found during a search of the stopped vehicle. *Id.* at 787. The Court reasoned that defendant did not have any possessory interest in the vehicle and that the seizure of the gun was not the product of the defendant's detention, since the officers' search of the car and discovery of the gun would still have occurred even if the defendant had been immediately released. *Id.*

As an initial matter, it appears that the reasoning of the majority opinion in *Pulliam* may have been abrogated by an intervening Supreme Court decision, *Brendlin v. California*, 551 U.S. 249 (2007).[2] But regardless of the continuing vitality of *Pulliam*, it is distinguishable from the present case, because here officers' seizure of drugs from the Jeep Liberty was the product of officers' prior illegal detention of Defendant. Unlike in *Pulliam*, it cannot be said that officers would inevitably have discovered the evidence in the Jeep Liberty regardless of whether Defendant was unlawfully detained. If officers had released Defendant but had continued to detain the homeowner and had still obtained her consent to search the garage during her prolonged detention,[3] it is not inevitable that the Jeep Liberty would still have been located in the garage when officers arrived at 5231

---

[2] In *Brendlin*, the Supreme Court held that a traffic stop subjects not only the driver of a vehicle but all passengers as well to Fourth Amendment seizure, without making the distinction drawn in *Pulliam* between a lawfully initiated but unlawfully prolonged traffic stop. 551 U.S. at 254-59. The Sixth Circuit has found that *Brendlin* abrogated a prior Sixth Circuit case relied on by *Pulliam*, *United States v. Carter*, 14 F.3d 1150 (6th Cir. 1994). *See United States v. Torres-Ramo*s, 536 F.3d 542, 549 n.5 (6th Cir. 2008) (recognizing abrogation of *Carter* by *Brendlin*); *Pulliam*, 405 F.3d at 790, 794 (relying on *Carter*); *see also United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007) (holding, based on *Brendlin*, that a passenger detained during a lawfully initiated but unlawfully prolonged traffic stop has standing to challenge evidence seized from the vehicle during the stop).

[3] It's not clear whether officers would have obtained the homeowner's consent in such a scenario. The unlawful detention of all occupants of the Sebring, and officers' separation of the occupants, may have contributed to the homeowner's consent. *Cf. United States v. Craighead*, 539 F.3d 1073, 1086 (9th Cir. 2008) ("A frequently occurring example of police domination concerns the removal of the suspect from the presence of family, friends, or colleagues who might lend moral support . . . .").

S. Via Noche Buena.

As the majority opinion in *Pulliam* explained, the result of that case would have been different if the defendant had shown that he would have been able to leave in the vehicle had he been allowed to leave; in that scenario, the defendant would have been able to show that the seizure of the gun was the fruit of his own unlawful detention. 405 F.3d at 787; *see also United States v. DeLuca*, 269 F.3d 1128, 1133 (10th Cir. 2001) (finding that evidence inside vehicle would have been discovered regardless of the defendant's presence where there was no showing that the defendant would have been able to leave in the vehicle if he had been allowed to leave). Here, if Defendant had been allowed to leave, he would have been able to return to 5231 S. Via Noche Buena and then leave in the Jeep Liberty. Because it cannot be said here that the drugs found in the Jeep Liberty would inevitably have been discovered even if Defendant had not been unlawfully detained during the prolonged stop of the Sebring and its occupants, the Government has not shown any manifest error in the Court's prior holding that the seizure of the drugs was the product of Defendant's prior unlawful detention. And because the seized drugs were the fruit of Defendant's unlawful detention, Defendant has standing to seek suppression of evidence of the drugs. *See Leon*, 468 U.S. at 910.

**IT IS ORDERED** that the Government's Motion for Reconsideration (Doc. 85) is **denied**.

Dated this 28th day of August, 2019.

_____
Honorable Rosemary Márquez
United States District Judge